**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

TERESA LITES, individually and on behalf of all
others similarly situated,

        Plaintiff,                            Civil No. 1:22-cv-20587-JEM

        v.                              **ORAL ARGUMENT REQUESTED**

AMAZON.COM SERVICES, LLC,

        Defendant.

_____

<u>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**</u>
<u>**AND MEMORANDUM OF LAW IN SUPPORT**</u>

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................ 1

II.  STANDARD OF REVIEW ................................................................................ 3

III. ARGUMENT ...................................................................................................... 4

    A.  Plaintiff Fails to Allege Plausible Facts to State a Claim that the COBRA Notice
    Cannot be "Understood by the Average Plan Participant," as Required By
    29 C.F.R. § 2590.606-4(b)(4) ......................................................................... 4

        1.  Plaintiff Alleges that Sections in the COBRA Notice are "Unnecessary,"
        But Nothing Prohibits Notices from Including Additional Accurate Information ...... 5

        2.  Plaintiff Fails to Allege Facts to Plead Plausibly that the Challenged Statements
        Cannot be "Understood by the Average Plan Participant" ......................................... 8

        3.  Plaintiff Fails to Allege that Statements in the COBRA Notice are Incorrect............ 11

            a.  The Statement in the COBRA Notice Regarding Potential Civil or
            Criminal Penalties ................................................................................................. 11

            b.  The Statement in the COBRA Notice Regarding Potential IRS Penalties ........... 13

    B.  Plaintiff's Claim That the COBRA Notice Violates COBRA Regulations by
    Not Naming the "Plan Administrator" Should Be Dismissed ......................................... 15

        1.  Plaintiff Lacks Article III Standing for her "Plan Administrator" Claim
        Because She Fails to Allege a Concrete Injury and Causation .................................. 16

        2.  Plaintiff Fails to Allege Plausible Facts to State a Claim that the COBRA
        Notice Does Not Name the Party Required By 29 C.F.R. § 2590.606-4(b)(4)(i) ...... 17

IV. CONCLUSION.................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*,
   833 F.3d 1299 (11th Cir. 2016) ................................................................. 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 3

*BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*,
   706 F. App'x 521 (11th Cir. 2017) ........................................................... 13

*Bryant v. Wal-Mart Stores*,
   No. 16-24818, 2020 WL 4333452 (S.D. Fla. July 15, 2020) ............................ 16, 17

*Carter v. Sw. Airlines Co. Bd. of Trs.*,
   No. 8:20-CV-1381, 2020 WL 7334504 (M.D. Fla. Dec. 14, 2020) ................... 18, 19

*City of Chi. v. Envtl. Def. Fund*,
   511 U.S. 328 (1994) ..................................................................................... 20

*Comm'r v. Keystone Consol. Indus., Inc.*,
   508 U.S. 152 (1993) ..................................................................................... 10

*Frankenmuth Mut. Ins. Co. v. Wal-Mart Assocs.' Health & Welfare Plan*,
   182 F. Supp. 2d 612 (E.D. Mich. 2002) ...................................................... 13

*Furnes v. Reeves*,
   362 F.3d 702 (11th Cir. 2004), *abrogated on other grounds*
   *by Lozano v. Montoya Alvarez, 572 U.S. 1, 10 (2014)* ................................ 19

*Green v. FCA US LLC*,
   No. 20-13079, 2021 WL 1750118 (E.D. Mich. May 4, 2021) .................... 12, 13, 17

*Guerrero v. Target Corp.*,
   889 F.Supp.2d 1348 (S.D. Fla. 2012) ........................................................... 3

*Harris v. Ivax Corp.*,
   182 F.3d 799 (11th Cir. 1999) ....................................................................... 1

*Mahoney v. Nokia, Inc.*,
   444 F. Supp. 2d 1246 (M.D. Fla. 2006), *aff'd*, 236 F. App'x 574 (11th Cir. 2007)................ 10

*Marty v. Anheuser-Busch Cos., LLC*,
   43 F.Supp.3d 1333 (S.D. Fla. 2014) ............................................................. 4

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*,
    851 F.3d 1076 (11th Cir. 2017) ................................................................................ 19

*Simpson v. Sanderson Farms, Inc.*,
    744 F.3d 702 (11th Cir. 2014) .................................................................................... 3

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (11th Cir. 2006) .................................................................................. 3

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).................................................................................. 16, 17

*Vazquez v. Marriott Int'l, Inc.*,
    No. 8:17-CV-00116, 2018 WL 3860217 (M.D. Fla. Aug. 7, 2018)............................ 8

*Wilson v. Sw. Bell Tel. Co.*,
    55 F.3d 399 (8th Cir. 1995) ........................................................................................ 9

**Federal Statutes**

18 U.S.C. § 1027 ...................................................................................................... 12

26 U.S.C. § 6055(b)(1)(B)(i) ................................................................................... 13

29 U.S.C. § 1002(16)(A).......................................................................................... 19

29 U.S.C. § 1022(a) ................................................................................................... 9

29 U.S.C. § 1166(a) ................................................................................................. 16

**State Statutes**

Ariz. Rev. Stat. Ann. § 20-466.03............................................................................. 7

Cal. Ins. Code § 1879.2.............................................................................................. 7

Fla. Stat. Ann. § 817.234 ........................................................................................... 7

Wash. Rev. Code Ann. § 48.135.080.......................................................................... 7

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................. 1, 2, 3

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 2, 3, 15

**Federal Regulations**

26 C.F.R. § 301.6724-1(e) ........................................................................14, 15

29 C.F.R. § 2520.102-2 ............................................................................. 10, 11

29 C.F.R. § 2590.606-4(g) ........................................................................... 5, 6

Treas. Reg. § 1.6055-1(h)(2) ......................................................................... 13

Treas. Reg. § 301.6724-1(e) ..................................................................... 13, 14

**Other Authorities**

FAQs on COBRA Continuation Health Coverage for Workers,
  https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-
  center/faqs/cobra-continuation-health-coverage-consumer.pdf ................................................11

Federal Employees Health Benefits Program, Health Benefits Election Form,
  https://www.opm.gov/forms/pdf_fill/sf2809.pdf (Nov. 2019) ....................................................8

Form W-9, https://www.irs.gov/pub/irs-pdf/fw9.pdf....................................................14

Model Election Notice,
  https://www.dol.gov/agencies/ebsa/laws-and-regulations/laws/cobra ...................................... 20

State Fraud Warnings,
  https://www.grinnellmutual.com/claims/report-a-claim/State-Fraud-Warning ........................6

U.S. Department of Education, Free Application for Federal Student Aid,
  https://studentaid.gov/sites/default/files/2022-23-fafsa-draft.pdf ...............................................8

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), Defendant Amazon.com Services LLC ("Amazon") moves to dismiss Plaintiff's Amended Class Action Complaint (Dkt. No. 19) (the "Amended Complaint" or "Am. Compl.").

## I.   INTRODUCTION

This case, brought nominally by a former Amazon employee who participated in the Amazon Health & Welfare Benefits Plan (the "Plan"), involves a notice[1] that Plaintiff received advising her of rights to continued health care coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") after her employment with Amazon terminated in January 2019. *See* Am. Compl. ¶¶ 59-65.  This case is but one of dozens of complaints filed in the past several years that are all substantially similar—all filed against large companies, alleging technical defects in COBRA notices, and seeking statutory penalties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  Indeed, this case is the ***third*** to be filed against Amazon, each of which filed by different plaintiffs' counsel yet including the ***exact same claims***.[2]

Plaintiff initiated this case with a complaint alleging that the COBRA Notice she received violated COBRA regulations in two discrete ways:  (1) that the Notice contains "unnecessary" information that federal regulations do not require—comprising a handful of sentences advising participants that the information they provide in electing COBRA must be truthful, and that they

---

[1] The notice that Plaintiff received in or around January 2019 advising her of her COBRA rights is referred to herein as the "COBRA Notice" or the "Notice."  A copy of the Notice is attached hereto as Exhibit A, which the Court may properly consider at this stage because it is discussed at length (and indeed quoted) in Plaintiff's Amended Complaint.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

[2] The two prior cases filed against Amazon were *Ousley v. Amazon Corporate, LLC*, No. 8:20-cv-00701 (S.D. Fla., filed Mar. 25, 2020) and *Kendall v. Amazon Corporate, LLC*, No. 3:20-cv-02493 (D.S.C., filed June 30, 2020).  Both cases were dismissed with prejudice shortly after they were filed.

must provide an accurate social security number; and (2) that the COBRA Notice fails to identify the "Plan Administrator," which is a defined term under ERISA.  *See* Am. Compl. ¶¶ 74-88, 99-102.  In response, Amazon filed a Motion to Dismiss, providing reasons why Plaintiff's complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for failing to state a claim and for lack of Article III standing, respectively.  *See generally* Mot. to Dismiss. Tellingly, rather than oppose the Motion, Plaintiff filed her Amended Complaint in an attempt to shore up her deficient allegations.  Plaintiff's attempt is unavailing—each of the deficiencies discussed in Defendant's Motion to Dismiss persists in Plaintiff's Amended Complaint.

*First*, Plaintiff still fails to allege plausibly that "warnings" in the COBRA Notice about potential civil or criminal penalties for knowingly providing incomplete or inaccurate information in applying for COBRA, and about IRS penalties for submitting an inaccurate tax identification number, violate COBRA and its implementing regulations.  Indeed, COBRA and its implementing regulations prescribe the ***minimum*** amount of information to be included in a COBRA election notice, and nothing prohibits a plan from including more information about participants' COBRA rights and obligations than the law requires.  Moreover, "warnings" like the sentences that Plaintiff challenges are commonplace—in fact, dozens of states ***require*** such warnings in different insurance forms like applications and claim forms—rendering Plaintiff's allegations regarding her purported apprehension at the warnings and Amazon's motivations utterly implausible. Additionally, Plaintiff does not—and cannot—allege that the supposedly "unnecessary" information is incorrect.  And she does not state any plausible facts to allege that words in the sentences at issue are "complex," filled with "technical jargon," or otherwise obfuscate the purpose of the COBRA Notice, which are the elements necessary to state a plausible claim that a COBRA notice is not written in a manner calculated to be understood by the average plan participant.

*Second*, Plaintiff's allegation that the COBRA Notice does not identify the "Plan Administrator" fails to state a claim for a violation of COBRA or its implementing regulations, because neither authority requires that a COBRA notice identify the "Plan Administrator." A COBRA notice must identify the name and contact information for "the party ***responsible under the plan for the administration of continuation coverage [COBRA] benefits***," which Amazon undisputedly did.  And even if Plaintiff's allegation had merit (which it does not), she has failed to allege facts to show that she has standing under Article III with respect to this claim.

Despite Plaintiff's attempt to replead her claims, the Amended Complaint remains deficient in multiple respects.  Accordingly, the Court should grant Amazon's instant Motion and dismiss the Amended Complaint in its entirety.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A plaintiff need not plead 'detailed factual allegations,' but he must demonstrate 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). While the Court must accept Plaintiff's well-pleaded facts as true, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (citations omitted).

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) encompasses both challenges based on the court's lack of federal subject matter jurisdiction and challenges based on lack of standing." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1352 (S.D. Fla. 2012).  As federal courts can only adjudicate actual cases or controversies, "Article III standing is

a jurisdictional requirement that cannot be waived and, as such, may be brought up at any time in the proceeding." *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1339 (S.D. Fla. 2014).

### III.   <u>ARGUMENT</u>

**A.    Plaintiff Fails to Allege Plausible Facts to State a Claim that the COBRA Notice Cannot be "Understood by the Average Plan Participant," as Required By 29 C.F.R. § 2590.606-4(b)(4)**

Plaintiff alleges that the COBRA Notice is not "written in a manner calculated to be understood by the average plan participant" as required under the COBRA implementing regulations at 29 C.F.R. § 2590.606-4(b)(4).   *See* Am. Compl. ¶¶ 74-88.   Specifically, she complains about two sections in the COBRA Notice.

*First*, Plaintiff alleges that the COBRA Notice "contains an ominous warning suggesting the submission of 'incomplete' information when electing COBRA may result in criminal or civil penalties." *See* Am. Compl. ¶ 8.  Plaintiff is referring to the following paragraph from page 8 of the COBRA Notice, a copy of which is attached hereto as Exhibit A:

> *You certify that all information is complete and accurate to the best of your knowledge.  Please note that any person who knowingly provides materially false, incomplete, or misleading information is considered to have committed an act to defraud or deceive the Plan Sponsor(s).  The filing of any application for insurance or other claim for benefits based on false, misleading, or incomplete information is a fraudulent act and may result in criminal or civil penalties.*

Ex. A at 8; Am. Compl. ¶ 8.

*Second*, Plaintiff alleges that the COBRA Notice "contains an unnecessary warning of a possible '$50 penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual.'" *See* Am. Compl. ¶ 11.  The paragraph that Plaintiff references appears on page 7 of the COBRA Notice, and provides:

> Note: A valid Social Security Number (SSN) or individual tax identification number (ITIN) is required to notify carriers of your COBRA coverage.  In addition, we are required to provide the Internal Revenue Service (IRS) with a social security number (SSN) or individual taxpayer identification number (ITIN) for all

individuals enrolled in coverage.  You may be subject to a $50 penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual.

Ex. A at 7.

Plaintiff's Amended Complaint still fails to state plausible facts to allege that the COBRA Notice is not "written in a manner calculated to be understood by the average plan participant," and thus violates 29 C.F.R. § 2590.606-4(b)(4), because:  (1) COBRA regulations and the Department of Labor ("DOL") model notice cited in the Amended Complaint only provide the *minimum* amount of information required for a notice to comply, and neither prohibits a plan from adding information to help explain COBRA rights and obligations to plan participants; (2) Plaintiff does not allege plausibly that the statements in the COBRA Notice use technical jargon or complex sentences, such that they would prevent such statements from being "understood by the average plan participant" under an objective standard; and (3) the two sections of the COBRA Notice that Plaintiff cites in her Amended Complaint are accurate statements of the law.

**1.      Plaintiff Alleges that Sections in the COBRA Notice are "Unnecessary," But Nothing Prohibits Notices from Including Additional Accurate Information**

Plaintiff claims that "Defendant could have used the Model Notice but deliberately chose to create its own notice, presumably to deter qualified employees from electing continuation coverage." *See* Am. Compl. ¶ 40.  Plaintiff's argument fails, as a matter of law, for several reasons.

*First*, what Plaintiff calls the DOL "Model Notice" is merely that—a "model" notice that plans may use *if* they choose to do so.  Even Plaintiff does not allege that plans are *required* to use the DOL "model notice."  Indeed, COBRA regulations provide that the model notice is "intended to *assist* administrators in discharging the notice obligations," and "[u]se of the model notice *is not mandatory*."  *See* 29 C.F.R. § 2590.606-4(g) (emphasis added).

*Second*, putting aside that Plaintiff is asking the Court to evaluate the COBRA Notice under a subjective standard that takes into account Amazon's **supposed** motives—rather than an objective standard that **even Plaintiff admits should apply** (*see* Section III.A.2 *infra*)—Plaintiff fails to allege that, as a matter of law, the Notice violates COBRA by including additional information to supplement what the DOL's model COBRA notice provides.[3]

To the contrary, COBRA regulations provide plainly that administrators should—and indeed "**must**"—add information beyond the minimum stated in the DOL model notice. *See* 29 C.F.R. § 2590.606-4(g) ("In order to use the model notice, administrators **must appropriately** add relevant information where indicated in the model notice, select among alternative language and **supplement the model notice to reflect applicable plan provisions**.") (emphasis added).  Even accepting Plaintiff's opinion that the few sentences about civil or criminal penalties for knowing misrepresentations as to who is eligible for COBRA coverage and the $50 IRS penalty for providing inaccurate social security numbers are "unnecessary," Plaintiff's allegation that the mere inclusion of these sections violates COBRA regulations fails as a matter of law.

*Third*, the Court need not accept Plaintiff's opinion that the challenged warnings are "unnecessary" because, in multiple similar circumstances, such warnings **are required** in other documents, including insurance documents.  Indeed, dozens of states require fraud warnings to be included in insurance applications and claim forms.  *See, e.g.*, State Fraud Warnings, https://www.grinnellmutual.com/claims/report-a-claim/State-Fraud-Warning (listing fraud

---

[3] Plaintiff asserts incorrectly that the Model Notice "contains all the required information and provides a 'safe harbor.'"  *See* Am. Compl. ¶ 42.  What COBRA regulations actually provide is that "[u]se of the model notice, **appropriately modified and supplemented**, will be deemed to satisfy the notice content requirements of paragraph (b)(4) of this section."  *See* 29 C.F.R. § 2590.606-4(g) (emphasis added).  The COBRA rules actually negate Plaintiff's contention that DOL intended for administrators simply to adopt the model COBRA notice wholesale without adding any other information.

warnings required by different states).  And at least two states—Arizona and California—provide that these warnings are for the "protection" of consumers filing insurance applications or claims. *See* Ariz. Rev. Stat. Ann. § 20-466.03; Cal. Ins. Code § 1879.2.

In Florida, for instance, insurance claim and application forms must provide that "[a]ny person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree."  *See* Fla. Stat. Ann. § 817.234.  Similarly, in Washington, where Amazon is headquartered, a state statute provides that "all applications for insurance . . . must contain a statement . . . that clearly states in substance the following:  '[i]t is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines, and denial of insurance benefits.'"  *See* Wash. Rev. Code Ann. § 48.135.080.  Both of these statements required for applications or claim forms are essentially the same as the "warning" that Plaintiff challenges in the COBRA Notice.  The fact that these statements are required by state law for insurance applications and claim forms evinces how commonplace they are in regular commercial activity.

In other words, Plaintiff's allegations that the "warning" paragraph on page 8 of the COBRA Notice is "unnecessary," that Amazon "discourages participation by warning recipients of potential criminal and civil liability for a crime or civil wrong that simply doesn't exist," and that Amazon "deliberately included threatening language to deter people from electing to continue their benefits," *see* Am. Compl. ¶¶ 11, 20, 79, are utterly implausible.  To the contrary, such warnings "protect" consumers like Plaintiff.

Further, it is implausible that Plaintiff or anyone else was dissuaded from electing COBRA *because* of such a warning, given that such warnings are ubiquitous in applications that people

submit every day.  For instance, in addition to the state requirements discussed above, the Health Benefits Election Form for the Federal Employees Health Benefits Program includes a warning that if information provided in the form "indicates a possible violation of civil or criminal law, it may be shared and verified with an appropriate Federal, state, or local law enforcement agency." *See* https://www.opm.gov/forms/pdf_fill/sf2809.pdf at 5 (Nov. 2019).   Similarly, the Free Application for Federal Student Aid ("FAFSA"), which is published by the U.S. Department of Education and filled out by undergraduate and graduate students and/or their parents every year for financial aid, warns applicants that "[i]f you purposely give false or misleading information, you may be fined up to $20,000, sent to prison, or both." *See* https://studentaid.gov/sites/default/files/2022-23-fafsa-draft.pdf.   Given the prevalence of fraud warnings in any number of economic activities, Plaintiff's allegation that such a warning affected her decision to elect COBRA is not plausible.

### 2.  Plaintiff Fails to Allege Facts to Plead Plausibly that the Challenged Statements Cannot be "Understood by the Average Plan Participant"

Plaintiff also fails to allege sufficient facts to claim plausibly that the COBRA Notice cannot be "understood by the average plan participant."  At most, Plaintiff alleges that the COBRA Notice violates COBRA regulations because it "creates an artificial fear of criminal prosecution or civil liability."  *See* Am. Compl. ¶ 8.  But, tellingly, Plaintiff does not—and cannot—cite any statutory or regulatory support for this proposition, which she instead makes up of whole cloth.

Plaintiff *admits* that the legal question of whether a COBRA notice can be "understood by the average plan participant" "has been interpreted as an *objective* standard *rather than requiring an inquiry into the subjective perception of the individual plan participants*."  *See* Am. Compl. ¶ 74 (emphasis added).  Indeed, courts apply an objective standard to determine whether a notice is "written in a manner calculated to be understood by the average plan participant."  *See Vazquez*

*v. Marriott Int'l, Inc.*, No. 8:17-CV-00116, 2018 WL 3860217, at *4 (M.D. Fla. Aug. 7, 2018) (the "average plan participant" requirement "has been interpreted as 'an objective standard rather than requiring an inquiry into the subjective perception of the individual [plan] participants'") (alteration in original); *see also Wilson v. Sw. Bell Tel. Co.*, 55 F.3d 399, 407 (8th Cir. 1995) (the requirement under ERISA that a summary plan description be "written in a manner calculated to be understood by the average plan participant" "appears to be an objective standard rather than requiring an inquiry into the subjective perception of the individual participants").

Plaintiff's admission that the standard under the COBRA rules is objective renders irrelevant her allegations that she was "confused" by the COBRA Notice, *see* Am. Compl. ¶ 46, or that the COBRA Notice "has a chilling effect, discouraging participants from enrolling in continuation coverage," *see id.* ¶ 44—even accepting these allegations as true for purposes of the instant Motion.  In evaluating the sufficiency of Plaintiff's factual allegations, the Court need only read challenged sections of the COBRA Notice itself to determine whether Plaintiff has alleged plausibly that under an objective standard it cannot be "understood" by an average plan participant.

While the COBRA regulations do not, themselves, explain specifically how one determines whether a notice can be "understood by the average plan participant," ERISA—into which COBRA is incorporated—includes the ***exact*** same requirement for summary plan descriptions ("SPDs").  *See* 29 U.S.C. § 1022(a) (providing that an SPD "shall be written in a manner calculated to be understood by the average plan participant").  And the SPD regulations detail how a plan administrator meets the statutory standard:

> (a) Method of presentation.  The summary plan description shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan.  In fulfilling these requirements, the plan administrator shall exercise considered judgment ***and discretion*** by taking into account such factors as the level of comprehension and education of typical

participants in the plan and the complexity of the terms of the plan. ***Consideration of these factors will usually require the limitation or elimination of technical jargon and of long, complex sentences***, the use of clarifying examples and illustrations, the use of clear cross references and a table of contents.

29 C.F.R. § 2520.102-2(a) (emphasis added). Because ERISA (of which COBRA is a part) requires that both SPDs and COBRA notices be "written in a manner calculated to be understood by the average plan participant," a regulation interpreting that standard for purposes of a SPD is persuasive authority regarding how to interpret and apply the same standard to a COBRA notice.[4] *See, e.g.*, *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993) ("It is a 'normal rule of statutory construction,' that 'identical words used in different parts of the same act are intended to have the same meaning.'") (internal citations omitted); *see also Mahoney v. Nokia, Inc.*, 444 F. Supp. 2d 1246, 1257–58 (M.D. Fla. 2006), *aff'd*, 236 F. App'x 574 (11th Cir. 2007) (observing that "courts examine and interpret regulations in the same manner as they interpret statutes").

In a nod to the analogous SPD standards, Plaintiff includes in her Amended Complaint the bald allegation that "Defendant's COBRA Notice contains 'technical jargon' and/or prohibited 'complex sentences,' including as to criminal and civil penalties." *See* Am. Compl. ¶ 49. But her allegation is not supported by any facts whatsoever. For instance, Plaintiff fails to allege what language in the statements about potential civil, criminal, or monetary penalties would constitute "technical jargon," or which sentences in the statements are allegedly "complex." *See* 29 C.F.R. § 2520.102-2(a). Nor could she—the Court need only read the statements themselves to conclude that they are written in clear sentences and with non-technical language.

---

[4] Plaintiff alleges, similarly, that "[p]ursuant to ERISA, notices that are drafted in a manner calculated to be understood by the average plan participant 'will usually require the limitation or elimination of technical jargon and of long, complex sentences, the use of clarifying examples and illustrations, the use of clear cross references and a table of contents.'" *See* Am. Compl. ¶ 16 (citing 29 C.F.R. § 2520.102-2).

Plaintiff also faults the COBRA Notice for allegedly not including "a single clarifying example and/or illustration demonstrating how or why plan participants risk criminal penalties and/or IRS fines by submitting incomplete information," and she also alleges that "there are no examples or illustrations of what constitutes 'false, misleading or incomplete' information."  *See* Am. Compl. ¶¶ 17, 47-48, 95.  Plaintiff is incorrect.  A mere reading of the statements about potential civil, criminal, or monetary penalties in the COBRA Notice that she challenges shows what actions would cause a Plan participant to potentially incur such penalties—*i.e.*, knowingly providing false, incomplete, or misleading information when applying for COBRA, or failing to provide an accurate tax identification number.  *See* Ex. A at 7-8; 29 C.F.R. § 2520.102-2(a). Plaintiff fails to plead plausibly that any examples beyond what the COBRA Notice already provides would be necessary for an average plan participant to understand these statements.

**3.      Plaintiff Fails to Allege that Statements in the COBRA Notice are Incorrect**

Plaintiff's Amended Complaint is devoid of facts showing that the handful of challenged sections in the COBRA Notice (related to civil or criminal penalties or the $50 IRS penalty) are incorrect or inaccurate statements of the law.  Nor could she allege such facts plausibly.

**a.      The Statement in the COBRA Notice Regarding Potential Civil or Criminal Penalties**

DOL guidance provides expressly that COBRA benefits may be terminated if an individual commits an act of fraud.  *See, e.g.*, FAQs on COBRA Continuation Health Coverage for Workers, available at https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/faqs/cobra-continuation-health-coverage-consumer.pdf (providing that a group health plan may terminate COBRA coverage early in several circumstances, including "fraud").  In addition, 18 U.S.C. § 1027 provides potential penalties for one who "makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose

11

any fact the disclosure of which is required by such title or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such title to be published or any information required by such title to be certified." That is exactly what the COBRA Notice advises participants of when it explains potential repercussions for "*any person who **knowingly** provides materially false, incomplete, or misleading information*" in their application. *See* Ex. A at 8 (italics in original, bold added).[5]

In opposition Plaintiff may cite the *Green v. FCA USA* decision from the Eastern District of Michigan in which the court—after determining the issue a "close call"—denied FCA's motion to dismiss this aspect of the complaint, noting that the statement that "a participant could be subject to a penalty for providing incomplete information" is "not a strictly accurate statement of the law."[6] *See Green v. FCA US LLC*, No. 20-13079, 2021 WL 1750118, at *5 (E.D. Mich. May 4, 2021), *reconsid. denied,* No. 20-13079 (E.D. Mich. July 19, 2021), ECF No. 26. Respectfully, however, the *Green* decision is erroneous. Among other things, the court considered one sentence in

---

[5] In her Amended Complaint, Plaintiff added two paragraphs attempting to allege that the COBRA Notice differs from 18 U.S.C. § 1027 because "the language in Defendant's COBRA Notice removes 'intent' as an element of the crime." *See* Am. Compl. ¶¶ 89-90. This allegation is plainly wrong, as the COBRA Notice states that "***knowingly***" providing "materially false, incomplete, or misleading information" may subject one to civil or criminal penalties. *See* Ex. A at 8. Plaintiff also alleges—without citing any authority—that "18 U.S.C. § 1027 is traditionally used to prosecute employers and fiduciaries of employee welfare and pension fund[s] for fraud and administrative abuses – not participants electing to continue their benefits under federal law." Am. Compl. ¶ 90. The Court need not accept this allegation, given that the statute refers expressly to a general "[w]hoever" as the subject for potential penalties, rather than "employers and fiduciaries" specifically. Moreover, even if Plaintiff were correct as to the types of individuals "traditionally" prosecuted under § 1027, that would not change the fact that a participant ***could*** be prosecuted under the section's plain language, meaning that the statement in the COBRA Notice is correct.

[6] The same court noted in a subsequent hearing of the plaintiffs' claims (which were identical to the claims Plaintiff raises here) that "this basic claim is not especially compelling and is certainly I think, in looking at this globally, it is – the theory is certainly postured for a claim that is not at all certain to prevail at this point." Hr'g Tr. at 8:2-17, *Green v. FCA US LLC*, No. 20-13079 (E.D. Mich. Mar. 31, 2022), ECF No. 39.

isolation, without regard to the remainder of the paragraph in which it was situated (which is identical to the paragraph on page 8 of the COBRA Notice), which plainly provides that it is only by **_knowingly_** giving "materially false, incomplete, or misleading information" that one would risk penalties. *See* Ex. A at 8. By applying this isolated reading without context, the court deviated from the well-settled rule that under ERISA (into which COBRA is incorporated) plan documents "must be read in [their] entirety." *See, e.g.*, *Frankenmuth Mut. Ins. Co. v. Wal-Mart Assocs.' Health & Welfare Plan*, 182 F. Supp. 2d 612, 617 (E.D. Mich. 2002); *see also BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017) (in evaluating an ERISA plan document, the court must "read[] the words in the context of the entire agreement and seek[] to give meaning to every term" (citing *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1306-07 (11th Cir. 2016)).

Additionally, the court in *Green*—although acknowledging that a COBRA Notice must be evaluated under an **_objective_** standard—effectively undermined that standard by concluding that the adequacy of the Notice should be evaluated taking into account the plaintiff's subjective understanding of the Notice. That is simply incorrect as a matter of law.

> **b.     The Statement in the COBRA Notice Regarding Potential IRS Penalties**

Similarly, the statement about IRS penalties for a participant's failure to provide a social security number or individual taxpayer identification number (collectively, "TINs") is accurate. Under the Internal Revenue Code, an employer sponsoring a benefit plan must report the TINs of its employees and their dependents who are enrolled in its self-insured health plan. *See* 26 U.S.C. § 6055(b)(1)(B)(i). If the employer does not report the TIN, significant IRS penalties can apply unless it solicits the TIN at certain intervals. *See* Treas. Reg. § 301.6724-1(e) (describing the "initial" and "annual" TIN solicitations that reporting entities must make); Prop. Treas. Reg. §

1.6055-1(h)(2).  And if an employer solicits TINs by mail, the employer ***must*** send a letter advising the individual of the possibility that a failure to provide a correct TIN can result in a $50 penalty from the IRS.  *See* Treas. Reg. § 301.6724-1(e)(2)(i) (providing that "[a] mail solicitation must include—(A) A letter informing the payee that he or she must provide his or her TIN ***and that he or she is subject to a $50 penalty*** imposed by the Internal Revenue Service under section 6723 if he or she fails to furnish his or her TIN") (emphasis added).

An employer's mail solicitation also must include a Form W-9 (Request for Taxpayer Identification Number and Certification) or a substitute Form W-9.  *See id.*  The Form W-9 provides directions informing that "[i]f you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect."[7]  The COBRA Notice clearly serves as one of the required TIN solicitations, and by informing qualified beneficiaries of this $50 penalty, the COBRA Notice provides ***the same*** information as participants would receive in employer solicitation letters and as it appears in instructions for federally-mandated IRS forms.

Plaintiff added several paragraphs to her Amended Complaint related to her $50 IRS penalty allegation—paragraphs 96-98—none of which should alter the conclusion that this allegation fails as a matter of law.  Most importantly, Plaintiff does not dispute that the statement in the COBRA Notice is accurate—nor could she, because the COBRA Notice tracks the Treasury Regulation.  *See* 26 C.F.R. § 301.6724-1(e)(2)(i)(A).  Instead, Plaintiff asserts that the COBRA Notice she received "did not include a return envelope," *see* Am. Compl. ¶ 98, which allegedly violates the Treasury Regulations.  Even if true, this allegation is a red herring that has ***nothing***

---

[7] The Form W-9 and accompanying instructions are available at https://www.irs.gov/pub/irs-pdf/fw9.pdf.

*whatsoever* to do with Plaintiff's claims in this case, and the question of whether the COBRA Notice complies with COBRA regulations. The Treasury Regulation at issue provides requirements for an *employer* to satisfy in order to demonstrate that the employer had "reasonable cause" for providing an incorrect employee TIN to the IRS. *See* 26 C.F.R. § 301.6724-1(e)(1). In other words, whether Plaintiff received a COBRA Notice without a return envelope (even if true) would only be relevant (to Amazon—not Plaintiff) if (1) Plaintiff hypothetically provided an incorrect TIN to Amazon and (2) the IRS attempted to assess a penalty on Amazon. None of that would change the fact that (as Plaintiff does not dispute) the statement about a $50 IRS penalty in the COBRA Notice is accurate, and therefore the statement complies with COBRA regulations.

Because the statements about civil or criminal penalties for knowingly submitting fraudulent information when applying for COBRA coverage and about IRS statutory penalties are correct statements of participants' legal obligations, Plaintiff has failed to allege plausibly that the statements cannot be "understood by the average plan participant" in violation of the COBRA disclosure regulations. *See* 29 C.F.R. § 2590.606-4(b)(4).

**B.     Plaintiff's Claim That the COBRA Notice Violates COBRA Regulations by Not Naming the "Plan Administrator" Should Be Dismissed**

Plaintiff also alleges that the COBRA Notice violates the disclosure regulation because it "does not identify the Plan Administrator." *See* Am. Compl. ¶¶ 26, 99-102. This claim should be dismissed for lack of Article III standing, as several courts addressing the issue have held. Alternatively, it should be dismissed under Rule 12(b)(6) based on the simple fact that the COBRA regulation Plaintiff cites *does not require naming the plan administrator*. On this issue, the U.S. Department of Labor has expressly rejected Plaintiff's position.

1.    **Plaintiff Lacks Article III Standing for her "Plan Administrator" Claim Because She Fails to Allege a Concrete Injury and Causation**

The Supreme Court recognizes that the "irreducible constitutional minimum" for standing under Article III requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).   Plaintiff, "as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*  And "[w]here, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (internal citation omitted).

Plaintiff does not allege that she suffered a tangible injury (such as loss of insurance coverage, or medical expenses that she needed to pay out-of-pocket) because the COBRA Notice did not name the "Plan Administrator."   Rather, she claims more broadly that "Defendant's deficient COBRA Notice caused Plaintiff an informational injury when Defendant failed to provide her with information to which she was entitled by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a)."  Am. Compl. ¶ 57.  Courts have already considered and rejected that Plaintiff's "informational injury" theory confers Article III standing.

In *Bryant v. Wal-Mart Stores, Inc.*, No. 16-24818, 2020 WL 4333452 (S.D. Fla. July 15, 2020), the magistrate judge issued a report and recommendation denying the plaintiffs' motion for class certification.  One of the plaintiffs' allegations in that case was, like Plaintiff alleges here, that the plaintiffs received a COBRA notice that did not comply with ERISA because it did not include contact information for the "plan administrator."  *See id.* at *16.  The judge concluded that the plaintiffs lacked standing with respect to this allegation because "there is simply no evidence that this supposed deficiency interfered in any way with their right or ability to elect [COBRA]."

16

*Id.*; *see also Spokeo, Inc.*, 136 S. Ct. at 1549 (a plaintiff could not satisfy Article III's injury in fact requirement by alleging a "bare procedural violation, divorced from any concrete harm").

In *Green*, the district court recently dismissed this exact same claim (*i.e.*, that a COBRA notice violated COBRA regulations for not identifying the "Plan Administrator") for lack of standing. *See Green*, 2021 WL 1750118, at *4. The court in *Green* ruled that the plaintiffs lacked standing because they "have failed to allege an injury in fact" and "have not alleged that they were harmed by this alleged misinformation." *Id.* For instance, "they have not alleged that they attempted to enroll or had questions and could not contact the administrator of the plan," and "[a]ssuming that the notice did not correctly identify the plan administrator, and the statute was violated, Plaintiffs have not asserted that they suffered any adverse consequences as a result." *Id.*

Here, Plaintiff's allegations are nearly identical to those alleged by the plaintiffs in *Bryant* and *Green*, and Plaintiff's allegations are deficient for the same reasons as courts found in those cases. Plaintiff does not allege that the COBRA Notice's identification of the "COBRA Administrator"—as opposed to the "Plan Administrator"—interfered with her ability to elect COBRA. Nor does Plaintiff allege that she had questions about electing COBRA but was unable to reach someone to get her questions answered. And Plaintiff does not allege that, but for the omission of the "Plan Administrator's" contact information, Plaintiff would have elected COBRA. Accordingly, Plaintiff's claim regarding Defendant's alleged failure to name and provide contact information for the "Plan Administrator" in the COBRA Notice should be dismissed for lack of Article III standing.

### 2.     Plaintiff Fails to Allege Plausible Facts to State a Claim that the COBRA Notice Does Not Name the Party Required By 29 C.F.R. § 2590.606-4(b)(4)(i)

Even if Plaintiff had pled plausible facts for standing, her claim fails as a matter of law. Put simply, she is trying to graft a new requirement onto the COBRA regulations that is not there.

The governing regulations provide that a COBRA notice "shall contain . . . [t]he name of the plan under which continuation coverage is available; and the name, address and telephone number of *the party responsible under the plan for the administration of continuation coverage benefits*." *See* 29 C.F.R. § 2590.606-4(b)(4)(i) (emphasis added).  Amazon met this requirement by providing the required contact information of its COBRA administrator, BenefitConnect, who is the party "responsible for COBRA administration," on page 8 of the COBRA Notice:

Enroll online at https://cobra.ehr.com, or return completed form to the administrator listed below, who is responsible for COBRA administration under your plan:

    BenefitConnect | COBRA
    PO Box 5884
    Hopkins, MN  55343-5884
    1-877-29-COBRA (26272)  [(858) 314-5108 International callers only]

Ex. A at 8.  In her Amended Complaint, Plaintiff misleadingly refers to BenefitConnect as a "third-party administrator."  *See* Am. Compl. ¶¶ 99, 101.  But from the plain language of the Notice, BenefitConnect is identified as the entity "who is responsible for COBRA administration" under the Plan, *see* Ex. A at 8—tracking virtually verbatim the language of the COBRA regulation. Accordingly, Plaintiff's claim fails as a matter of law.

To attempt to overcome this obvious problem, Plaintiff contends that the regulation requires the COBRA Notice to name the "Plan Administrator."  *See* Am. Compl. ¶¶ 26-27, 101-02.  But this argument has already been rejected by another court, which concluded that "the plain language of the regulation does not support it."  *Carter v. Sw. Airlines Co. Bd. of Trs.*, No. 8:20-CV-1381, 2020 WL 7334504, at *6 (M.D. Fla. Dec. 14, 2020).  The court in *Carter* reasoned that "the term 'plan administrator' does not appear in the provision at issue," and "[i]t is a well-known canon of construction that courts should not insert omitted terms into plainly written text."  *Id.*

Further, in rejecting an assertion like Plaintiff's that COBRA notices must name the "Plan Administrator," the court in *Carter* favorably cited an amicus brief filed in that case by the United States Department of Labor—the federal agency that promulgated the very regulation Plaintiff

alleges that Amazon violated.  *Id.* at *1.  The DOL presented multiple reasons why, based on the plain language of the regulation and canons of statutory interpretation, "29 C.F.R. § 2590.606-4(b)(4)(i) . . . does not require COBRA election notices to include the contact information for plan administrators, where a different entity administers the plan's continuation coverage under COBRA."  Br. for Sec'y of Labor as Amicus Curiae, *Carter v. Sw. Airlines Co. Bd. of Trs.*, No. 8:20-cv-01381 (M.D. Fla. Oct. 5, 2020), ECF No. 29-1 ("DOL Amicus") at 14.[8]

Consistent with the decision in *Carter* and the DOL Amicus, as a matter of statutory construction, the terms "plan administrator" and "party responsible under the plan for the administration of continuation coverage benefits" must be interpreted to describe two different entities.  DOL Amicus, at 5-10.  *See, e.g.*, *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017) ("When Congress uses 'different language in similar sections,' we should give those words different meanings.") (citations omitted); *Furnes v. Reeves*, 362 F.3d 702, 713 (11th Cir. 2004), *abrogated on other grounds by Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) ("It is a fundamental rule of statutory interpretation that, within an act, the same words have the same meanings and different words have different meanings.").

The term "administrator" is defined by ERISA.  *See* 29 U.S.C. § 1002(16)(A) (providing that "[t]he term 'administrator' means—(i) the person specifically so designated by the terms of the instrument under which the plan is operated . . . ."); Am. Compl. ¶ 10.  But ERISA does not provide that the "administrator" must be responsible for administering COBRA benefits.  To the contrary, because the COBRA regulations under subsection 4(b)(4)(i) do ***not*** require a COBRA notice to name the "administrator"—but rather the "party responsible under the plan for the administration of continuation coverage benefits"—it follows that the entity required to be listed

---

[8] A copy of the DOL Amicus is attached as Exhibit B.

on the COBRA notice is the party responsible for the enrollment and administration of COBRA benefits. *See* 29 C.F.R. § 2590.606-4(b)(4)(i). If the DOL had intended to require COBRA notices to name the "administrator," it would have drafted the final regulation to provide that defined term. *See, e.g.*, *City of Chi. v. Envtl. Def. Fund*, 511 U.S. 328, 338 (1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.") (alteration in original) (internal quotation marks omitted).

Further, the DOL's Model Election Notice shows that Amazon's COBRA Notice is compliant with the statute and its implementing regulations. The Model Election Notice at 8, available at https://www.dol.gov/agencies/ebsa/laws-and-regulations/laws/cobra, provides if a plan participant has questions about COBRA payments, "You may contact [*enter appropriate contact information, e.g., the Plan Administrator **or other party responsible for COBRA administration under the Plan**]* to confirm the correct amount of your first payment" (italics in original; bold and underline added for emphasis). If DOL had intended "the party responsible for COBRA administration" to mean the "Plan Administrator," it would not have differentiated between the two entities, or given plans the option of identifying one entity or the other in a notice.

At bottom, subsection 4(b)(4)(i) requires a COBRA notice to name the party responsible for administering COBRA benefits, which is exactly what the COBRA Notice provides at page 8. Plaintiff therefore has failed to state facts on which to allege plausibly that the COBRA Notice violates the regulation, and the Court should dismiss this claim.

## IV.   **CONCLUSION**

For the foregoing reasons, Amazon respectfully requests that the Court dismiss the Amended Complaint in its entirety, with prejudice.

## <u>REQUEST FOR HEARING</u>

Due to the importance of the issues raised in this Motion, Amazon respectfully requests oral argument on the Motion pursuant to Local Rule 7.1(b).  Amazon estimates that oral argument will require half an hour for each side.


Dated: May 11, 2022                          Respectfully submitted,

<p style="margin-left: 40%"><i>s/ Richard C. McCrea, Jr.</i>
Richard C. McCrea, Jr.
Florida Bar No. 3351539
Email: mccrear@gtlaw.com
<b>GREENBERG TRAURIG, P.A.</b>
101 E. Kennedy Boulevard Ste. 1900
Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile

Edward J. Meehan (admitted <i>pro hac vice</i>)
Email: emeehan@groom.com
Mark C. Nielsen (admitted <i>pro hac vice</i>)
Email: mnielsen@groom.com
Paul J. Rinefierd (admitted <i>pro hac vice</i>)
Email: prinefierd@groom.com
<b>GROOM LAW GROUP, CHARTERED</b>
1701 Pennsylvania Ave., NW, Ste. 1200
Washington, D.C. 20006
(202) 857-0620 – Telephone
(202) 659-4503 – Facsimile

<i>Counsel for Defendant Amazon.com Services LLC</i></p>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 11th day of May 2022, I electronically filed the foregoing

by using the ECF system, which will send a notice of electronic filing to all counsel of record.

<div align="right">

*/s  Richard C. McCrea, Jr.*
Richard C. McCrea, Jr.

</div>