UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 22-20587-CIV-MARTINEZ-BECERRA

TERESA LITES, individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

AMAZON.COM SERVICES, LLC,

        Defendant.

_____/

## DEFENDANT'S PRE-TRIAL MEMORANDUM OF LAW

Defendant Amazon.com Services LLC ("Amazon") respectfully submits this pre-trial memorandum of law.

### I.    PRELIMINARY STATEMENT

Nominal plaintiff (Teresa Lites) ("Plaintiff") alleges, on behalf of a putative class, that Amazon's COBRA Notice ("the Notice") impermissibly discouraged Amazon employees from electing COBRA by – as she frames it – "warning" them to (1) provide accurate Social Security Numbers ("SSNs"), and (2) attest that the information they provide is accurate. As a result, Plaintiff claims that the Notice is not "written in a manner reasonably calculated to be understood by the average plan participant" in violation of the COBRA statute and its implementing regulations. Plaintiff therefore demands (1) the maximum of ERISA's *discretionary* penalty of $110 per individual, per day; (2) injunctive relief; and (3) attorneys' fees and costs. *See* Second Am. Class Action Compl. [ECF No. 34] ("SAC"), ¶¶ 126-132.[1]

---

[1] Plaintiff's breach of fiduciary duty claim (Count II) has been dismissed. *See* Report & Recommendation on Def.'s Mot. to Dismiss Pl.'s Second Am. Compl. [ECF No. 74] ("R&R"), at 12-15; Order Adopting Magistrate Judge's Report & Recommendation [ECF No. 104] ("Order Adopting R&R"). The portion of Count I alleging that the Notice violates the COBRA statute and its implementing regulations because it did not identify the "Plan Administrator" also has been dismissed. *See* R&R at 9-12; Order Adopting R&R.

1

This case illustrates what happens when defendants "give in" to the threat of class action lawsuits. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019) (acknowledging the "*in terrorem* character of a class action").[2] As discussed in Amazon's Motions to Dismiss and its Motion for Summary Judgment, there has been a wave of lawsuits filed against large employers by a handful of plaintiffs' firms alleging that such employers' COBRA notices have hyper-technical defects that somehow entitle putative classes to massive penalties. Most of these cases have resolved by settlement on class-wide terms.[3] Not surprisingly, Plaintiff's initial and amended complaints in this action cribbed many of the allegations from previously filed lawsuits—including Plaintiff's claims that (i) the Notice "discouraged" her from electing COBRA coverage, (ii) she was "confused" by the Notice and (iii) that Amazon drafted the Notice with the intent to "deter" and "chill" election of COBRA benefits. Amazon understands that this is the first one of these COBRA cases to go to trial.

Although some of the allegations that Plaintiff recycled from other COBRA cases were sufficient to survive dismissal under Rule 12(b)(6), the evidence at trial will show that Plaintiff's allegations are not credible or sustainable on the merits. The evidence will demonstrate that there is nothing unlawful about Amazon's COBRA Notice and, even if it is deemed not perfectly drafted in every word, it was "reasonably calculated" to be clear. Further, Amazon's good faith, coupled with the lack of any appreciable harm from any hyper-technical failing in the wording of the Notice, means statutory penalties are not warranted. Among other things, the evidence at trial will show that:

- The Notice complies with the COBRA statute and its implementing regulations. The Notice advised recipients of the continuation coverage available, the cost of such coverage, when such coverage had to be elected, where payments had to be sent, and **provided a toll-free telephone number—listed on multiple pages**—to call to obtain clarification or assistance on anything in the Notice. The evidence

---

[2] *See also Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 678 (7th Cir. 2009) ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good. For by aggregating a large number of claims, a class action can impose a huge contingent liability on a defendant.") (citation omitted).

[3] Plaintiff cites a litany of other recently filed COBRA cases that assert allegations substantially identical to those at issue here—many of which resolved by settlement—in support of her motion for class certification. *See* Pl.'s Mot. for Class Certification [ECF No. 55] at 2-3.

- will also show that Plaintiff actually called to obtain assistance on another point related to COBRA, but did *not* raise any of the concerns she alleges in this lawsuit.

- The Notice is "written in a manner calculated to be understood by the average plan participant." The handful of sentences at issue in this lawsuit – which are discussed below –are permitted by the applicable regulations, and are correct statements of the law.

- To the extent Plaintiff even received the Notice, her decision not to elect COBRA coverage was *not* prompted by any of the sentences at issue. Plaintiff's allegation that she was "frightened" by simple statements in the Notice that she must provide an accurate Social Security Number and be truthful is frivolous. Indeed, these are common place certifications and reminders to provide accurate information undeniably known to her.[4] It was due to COBRA's cost (102 percent of the total premium cost, without any employer subsidy) that Plaintiff declined COBRA. As a result, Plaintiff cannot prove, by a preponderance of the evidence, that she has Article III standing because her injuries are not "fairly traceable" to the Notice.

- Amazon acted in good faith. Amazon contracted with Willis Towers Watson ("WTW") – a well-respected multi-national firm – to administer COBRA coverage to former eligible Amazon employees, and to serve as COBRA administrator to the Amazon Health & Welfare Benefits Plan (the "Plan"). Both WTW and Amazon regularly reviewed the Notice for compliance with the COBRA statute and its implementing regulations.

## II. SUMMARY OF THE EVIDENCE

The COBRA Notice at issue is a multi-page document that was sent to Amazon employees who experienced a "qualifying event" – such as the termination of employment – that would otherwise cause the loss of health insurance and certain other types of coverage (such as dental or vision coverage). The Notice advises the recipient they are at risk of losing insurance coverage due to the qualifying event, and advises them of their right to continue such coverage for a specified period of time (*e.g.*, 18- or 36 months), if they timely elect COBRA and timely pay the cost of COBRA coverage (which is capped, by statute, at 102 percent of the total premium cost).

---

[4] All Plaintiff needed to complete the COBRA Notice was (i) the name of each dependent, (ii) her relationship to each dependent; (iii) the date of birth of each dependent; and (iv) her own and each dependent's social security number. Def.'s Tr. Ex. 30 at WTW_LITES_000138-139.

The Notice also advises the recipient, among other things, as to (1) any dependents for whom coverage may be elected, (2) the cost of COBRA coverage, (3) the date by which COBRA must be elected, (4) the date that COBRA premiums are due (and the address to which they must be sent), (5) the date that COBRA will terminate, (6) the circumstances in which COBRA coverage may be terminated early (such as the non-payment of premiums), (7) the availability of other types of coverage that may be less expensive—such as health insurance coverage subsidized by the government that is available through a state or federal healthcare exchange, (8) the process for electing COBRA (such as the mailing of signed COBRA election forms by a specified date), and (9) a toll-free number that the recipient may call to have any questions about COBRA answered.

Put simply, the Notice provides the recipient with all the information needed for them to make an informed decision as to whether the election of COBRA coverage makes sense for them (and any dependents).  Plaintiff asserts that that she received the Notice, and she does not dispute that the Notice provided her with *all* of information required by law.  Moreover, Plaintiff does not dispute that she understood *all* of the information set forth in the Notice as to when and how to elect COBRA, and how much it would cost.  Instead, she claims that two short paragraphs in the multi-page Notice – with such paragraphs comprising just a handful of simple sentences – somehow "confused" her and caused her not to elect COBRA.  This claim lacks any evidentiary support.

**A.     The Notice and Certification About Which Plaintiff Complains**

Plaintiff's claim for statutory penalties relates to just two paragraphs of the Notice.  The first paragraph (the "IRS Penalty Notice") describes a potential $50 penalty from the IRS:

> Note:  A valid Social Security Number (SSN) or individual tax identification number (ITIN) is required to notify carriers of your COBRA coverage.  In addition, we are required to provide the Internal Revenue Service (IRS) with a social security number (SSN) or individual tax payer identification number (ITIN) for all individuals enrolled in coverage.  You may be subject to a $50 penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual.

Def.'s Tr. Ex. 30 at WTW_LITES_000138.

The second paragraph (the "Civil or Criminal Penalty Certification") describes potential criminal or civil penalties:

4

> You certify that all information is complete and accurate to the best of your knowledge. Please note that any person who knowingly provides materially false, incomplete or misleading information is considered to have committed an act to defraud or deceive the Plan Sponsor(s). The filing of any application for insurance or other claim for benefits based on false, misleading, or incomplete information is a fraudulent act and may result in criminal or civil penalties.

*Id.* at WTW_LITES_000139.

B.   **Summary of Anticipated Testimony**

   1.   **Plaintiff**

It is anticipated that Plaintiff will testify that she received the COBRA Notice by mail, reviewed the contents of the Notice and ultimately decided not to elect COBRA coverage because she was "scared" by the IRS Penalty Notice and the Civil or Criminal Penalties Certification, and/or found the language of these paragraphs to be confusing. There are a number of facts, however, that disprove Plaintiff's claim that she did not elect COBRA coverage *because of* these two short paragraphs that Amazon will elicit on cross-examination or during its case-in-chief.

*First*, before and around the time that Plaintiff left Amazon and Amazon had the COBRA Notice sent to her, Plaintiff was involved with several criminal and civil matters. *See* Def.'s Opp. to Pl.'s Mot. for Class Certification [ECF No. 66] at 9. Unlike the "average plan participant," Plaintiff's fear of the prospect of civil or criminal penalties was influenced by her prior experience. *Id.* at 9-10.

*Second*, other than the time that Plaintiff worked at Amazon, she regularly went without health insurance. *See id.* at 10. Her failure to elect COBRA coverage thus was informed by her regular experience to *not* have health insurance coverage.

*Third*, Plaintiff signed multiple documents required for a workers' compensation application that included clear notifications and certifications regarding fraud that were similar to the language she challenges in the COBRA Notice. *Id.* at 10. It is thus highly unlikely that similar statements in the COBRA Notice caused her to decline coverage. *Id.*

*Fourth*, there is a question as to whether Plaintiff even received (and read) a copy of the Notice at all. Plaintiff claims to have received the Notice at two separate mailing addresses—one in Deltona, Florida and one in Edgewater, Florida. WTW's records indicate that it only mailed the Notice to the Deltona address. *See id.* WTW's records also include the following notation: "RECEIVED RETURN MAIL: UNABLE TO FORWARD." *See id.* If the Court finds that

Plaintiff did not receive the Notice, she will not be able to prove that she has Article III standing because there would be no wording in the Notice that would have caused her not to elect COBRA. *See id.* at 10-11.

***Fifth***, the evidence at trial will show that Plaintiff did not elect COBRA coverage because it was too costly. *See id.* at 4. The annual cost for medical, dental, and vision coverage for Plaintiff and her children was approximately $8,000—which was just $1,000 less than the amount of money Plaintiff had in her savings account at the time she left Amazon. *See id.* The evidence will thus show that Plaintiff chose not to elect COBRA because it was cost prohibitive—not because she was "scared" or "confused" by the two short paragraphs at issue.

Further, it is anticipated that Plaintiff will also admit that she understood how much COBRA coverage would cost, the process for electing COBRA coverage for herself and her children, and how she could get any questions she had regarding electing COBRA coverage answered. In sum, Plaintiff's testimony will demonstrate that she knew how to elect COBRA coverage—and that she did not do so for reasons entirely **unrelated** to the two simple paragraphs that she has put at issue.

### 2. Dr. Habick

Plaintiff intends to offer the "expert" testimony of Dr. Timothy Habick regarding the "communicative sufficiency" of the Criminal or Civil Penalty Certification.[5] Dr. Habick purports to apply the "science of linguistics," including the "principle of cooperative communication" to the Notice.

Dr. Habick's "expert" opinions should be excluded for the reasons set forth in Defendant's Motion to Exclude the Testimony of Dr. Timothy Habick [ECF No. 78] ("Daubert Mot.")—*i.e.*, his testimony will not be helpful to the Court, he is not qualified to opine on the COBRA Notice and his methodology is not reliable. Dr. Habick's testimony will not assist the Court in determining, under the governing ***objective standard***, whether the Notice is "written in a manner reasonably calculated to be understood by the average plan participant." *See* Daubert Mot. at 7-9; Daubert Reply at 7-9. Dr. Habick also is not qualified to opine on the Notice because he has no

---

[5] Plaintiff withdrew Dr. Habick's opinion regarding the IRS Penalty Notice. *See* Pl.'s Resp. to Def.'s Mot. to Exclude the Expert Op. of Timothy Habick [ECF No. 93] at 1-2 n.1 (withdrawing Paragraph 65-82 of Dr. Habick's report). *See also* Reply Mem. in Support of Def.'s Mot. to Exclude the Expert Testimony of Dr. Timothy Habick [ECF No. 102] at 2-3 ("Daubert Reply").

6

experience regarding the COBRA statute or its implementing regulations, and his experience developing standardized test questions has no relevance to the issues before the Court. *See* Daubert Mot. at 10-12; Daubert Reply at 3-4. Further, Dr. Habick's purportedly "expert" opinions are his own personal views of the Notice and are not rooted in any identifiable, testable "methodology." *See* Daubert Mot. at 14-16; Daubert Reply at 5-6. Indeed, Dr. Habick has admitted that his methodology is not "generally accepted." Daubert Mot. at 17; Daubert Reply at 6.

### 3. Amazon's Corporate Representative

Amazon's corporate representative, Alysia Paxton (Senior Manager, Vendor Product Experience, Benefits Experience and Technology), will testify that Amazon retained WTW in 2011 to administer COBRA coverage to former eligible Amazon employees as required by the COBRA statute, and to serve as COBRA administrator to the Plan. Ms. Paxton will further testify that WTW prepared a template COBRA notice that it provided to Amazon. Ms. Paxton will describe the process that Amazon followed to review and revise the template notice, including her own review of the Notice and review of the Notice in consultation with internal and outside legal counsel. Ms. Paxton will explain why she believed that the Notice was reasonably crafted for the average Amazon employee. Ms. Paxton will further describe the complaints (including lawsuits and informal complaints) that Amazon has received regarding the understandability of the Notice.

It is anticipated that Ms. Paxton will also provide generalized data on Amazon employee education levels and will testify regarding the categories of Amazon employees who are eligible for COBRA coverage under the Plan. Further, Ms. Paxton will testify that Amazon did not track the number of eligible employees electing COBRA coverage on a current basis and did not take steps to discourage COBRA enrollment. Ms. Paxton will also testify regarding the cost structure of the COBRA coverage available and how the costs of COBRA coverage impact the Plan.

### 4. Willis Towers Watson's Corporate Representative.

WTW's corporate representative, James Fox, will testify regarding its role as Amazon's COBRA Administrator. Mr. Fox will explain the process employed by WTW to identify Amazon employees eligible for COBRA coverage, the process by which COBRA notices are mailed to eligible Amazon employees, the records WTW maintains regarding mailed notices (and specifically the records it maintained regarding the notice mailed to Ms. Lites), and the process used by WTW to track COBRA coverage elections.

Further, Mr. Fox will testify regarding the process WTW follows to review its template COBRA Notice and the notice it issued on behalf of Amazon.  Mr. Fox will testify that WTW included the IRS Penalty Notice in its template in order to comply with requirements under the Affordable Care Act with respect to employer solicitations for employee Social Security Numbers or tax identification numbers.  Mr. Fox will also testify that the Criminal or Civil Penalty Certification appeared in a template used by a third-party COBRA administrator that Willis Towers Watson acquired, and was later included in WTW's template after WTW merged a prior version of its template notice with the template from the acquired company.

Mr. Fox will further testify that WTW did not track or analyze the financial impact to Amazon of eligible employees electing COBRA coverage.

### 5. Dr. Adam Block

Dr. Adam Block is a health economist.  On behalf of Amazon, Dr. Block will testify that, in his expert opinion, an individual who, like Plaintiff, did not elect COBRA likely did so for any one of multiple alternative reasons unrelated to the two paragraphs at issue" in the Notice.  Among other things, Mr. Block will testify that COBRA coverage is prohibitively expensive for many, because individuals may be required to pay up to 102% of the unsubsidized premium price for coverage, without any employer contribution.  Further, Mr. Block will testify that the Affordable Care Act has created insurance marketplaces with cheaper coverage options.  In sum, Mr. Block will testify that, regardless of the content of the COBRA Notice, individuals tend to elect or reject COBRA coverage based on its cost, especially while they are unemployed.

### III. UNUSUAL LEGAL ISSUES

**A. Amazon's COBRA Notice Complies with the Implementing Regulation.**

As set forth in Amazon's pending Motion for Summary Judgment [ECF No. 77] ("Summary J. Mot."), whether the Notice was "written in a manner reasonably calculated to be understood by the average plan participant" is governed by an ***objective standard***. *Id.* at 8.  It is undisputed that the following guidance, which is set forth in the regulation regarding the interpretation of ERISA summary plan descriptions, governs this inquiry:

> (a) Method of presentation.  The summary plan description ***shall be written in a manner calculated to be understood by the average plan participant*** and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan.  In fulfilling these requirements, the plan

>administrator shall *exercise considered judgment and discretion* by taking into account such factors as the level of comprehension and education of typical participants in the plan and the complexity of the terms of the plan. *Consideration of these factors will usually require the limitation or elimination of technical jargon and of long, complex sentences*, the use of clarifying examples and illustrations, the use of clear cross references and a table of contents.

29 C.F.R. § 2520.102-2(a). *See also* Summary J. Mot. at 9.

Regardless of whether the Court resolves this issue as a matter of law on summary judgment or fact at trial, it is clear, under this objective standard, that the Notice complies with the governing regulation.

*Plaintiff admits that, based on her purported review of the Notice, she knew that COBRA coverage was available, the cost of such coverage, and the process she needed to follow to elect such coverage*. *See id.* at 10. Further, as explained in Amazon's summary judgment motion, the Notice does not contain "technical jargon" (indeed, at deposition, Plaintiff could not identify any "technical jargon" in the Notice), the information at issue in the two paragraphs about which Plaintiff complains are permitted by the applicable DOL regulations, and are, moreover, correct statements of law. *See id.* at 9-17.

In addition to the objective standard, the analogous regulation authorizes an administrator to "exercise considered judgment and discretion" when crafting a covered communication to a plan participant (like an SPD or COBRA notice). There is substantial leeway in this standard, and no strict liability that requires a communication to be absolutely perfect (even though Amazon maintains there is no issue whatsoever with its COBRA Notice).

The evidence at trial will also demonstrate that, contrary to Plaintiff's allegation, the Notice was *not* designed to discourage eligible employees from electing COBRA coverage. *Id.* at 6-7.

**B.  No Statutory Penalty is Warranted.**

Even if the Court ultimately determines that the Notice does not satisfy the COBRA statute and its implementing regulations, no statutory penalties are warranted. The Court has discretion regarding (1) *whether* to assess a statutory penalty and (2) the *amount* of such penalty, subject to a cap of $110 per day. *See* 29 U.S.C. § 1132(c)(1). When determining whether to assess a statutory penalty, the Court must consider whether Amazon acted in good faith in formulating the Notice and whether there has been harm or prejudice to Plaintiff. *See Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1271 (11th Cir. 2008) ("While a district court may not deny penalties solely on the basis of a lack of prejudice, prejudice *is* a factor that a court should consider in exercising its discretion.")

9

(emphasis added), *reh'g denied*, 278 F. App'x 1002 (11th Cir. 2008); *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993) (considering an employer or administrator's bad faith to be relevant); *Pottayil v. Thyssenkraupp Elevator Corp.*, 574 F. Supp. 3d 1282, 1293 (N.D. Ga. 2021) ("[C]ourts generally consider factors such as bad faith or intentional conduct on the part of the administrator, . . . and the existence of any prejudice to the participant or beneficiary.").[6]

Here, the evidence at trial will show that the Notice advised recipients regarding the availability of continuation coverage, the cost of such coverage, when such coverage had to be elected, where payments had to be sent, and provided a toll-free telephone number—which the Notice listed on multiple pages—to call to obtain clarification or assistance on any matter in the Notice. Put simply: the COBRA Notice gave Plaintiff (and the putative class) *all* the information required by ERISA and the COBRA regulations.

Further, the evidence at trial will show that Amazon acted in good faith. Among other things, Amazon and WTW regularly reviewed the Notice for compliance with COBRA and its implementing regulations. Additionally, the evidence at trial will show that neither Amazon nor WTW tracked the number of people electing COBRA coverage on a current basis—or their health care costs—which contradicts Plaintiff's allegation that Amazon included the language at issue to discourage high-cost individuals from electing COBRA coverage.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should dismiss this case with prejudice and enter judgment on behalf of Amazon.

Dated: March 31, 2023

Respectfully submitted,

*s/ Richard C. McCrea, Jr.*
Richard C. McCrea, Jr.
Florida Bar No. 3351539
Email: mccrear@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Boulevard Ste. 1900
Tampa, Florida 33602

---

[6] Other courts of appeals have similarly held that a district court should consider prejudice and bad faith in deciding whether to impose penalties under ERISA Section 502(c). *See, e.g.*, *Cole v. Trinity Health Corp.*, 774 F.3d 423, 429 (8th Cir. 2014); *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011); *Kerkhof v. MCI WorldCom, Inc.*, 282 F.3d 44, 56 (1st Cir. 2002) (collecting cases).

(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile

Edward J. Meehan (admitted *pro hac vice*)
Email: emeehan@groom.com
Mark C. Nielsen (admitted *pro hac vice*)
Email: mnielsen@groom.com
Paul J. Rinefierd (admitted *pro hac vice*)
Email: prinefierd@groom.com
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Ave., NW, Ste. 1200
Washington, D.C. 20006
(202) 857-0620 – Telephone
(202) 659-4503 – Facsimile

*Counsel for Defendant Amazon.com Services LLC*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of March, 2023, I electronically filed the foregoing by using the ECF system, which will send a notice of electronic filing to all counsel of record.

*s/ Richard C. McCrea, Jr.*
Richard C. McCrea, Jr.
